UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE ARTURO FERREIRA-CHAVEZ,<br><br>Defendant. | Case No. 1:20-cr-00145-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Defendant Jose Arturo Ferreira-Chavez's First and Second Motions to Dismiss the Government's Indictment, Dkt. 17; Dkt. 18, and his Motion to Compel. Dkt 20. The Court heard oral argument on December 11, 2020. For the reasons explained below, the Court will grant the First Motion to Dismiss rendering the remaining motions moot.

## BACKGROUND

Ferreira is a native and citizen of Mexico. He was previously removed from the United States on a final order of removal in 2010. *Response*, Dkt. 28 at 1. At some point after his removal, Ferreira reentered the country. In early 2020, Immigrations and Customs Enforcement (ICE) arrested Ferreira and reinstated his

MEMORANDUM DECISION AND ORDER - 1

prior order of removal. *Id.*

On July 14, 2020, the grand jury returned an indictment charging Ferreira with one count of illegal reentry in violation of 18 U.S.C. § 1326(a) and (b). Dkt. 1. He then appeared before the magistrate court for a video arraignment, and trial was set for September 21, 2020. Dkt. 5.

The Government sought to have Ferreira detained pending resolution of the criminal matter. After a hearing on the matter, the magistrate judge ordered Ferreira released pursuant to the Bail Reform Act (BRA).

Ferreira was released from the custody of the Marshal. However, he was immediately detained by ICE pending a determination of release or removal due to his prior order. Subsequently, the Department of Homeland Security deported Ferreira despite the pending criminal charges.

Through Counsel, Ferreira filled two separate motions to dismiss the indictment based on his deportation and the unconstitutionality of the Immigration and Nationality Act (INA).

## LEGAL STANDARD

A district court may dismiss an indictment in an exercise of its supervisory powers for three reasons: to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rest on appropriate considerations validly before a jury; or to deter future illegal conduct. *United*

*States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991); *see also United States v. Hasting*, 461 U.S. 499, 505 (1983) (federal courts "supervisory powers are threefold"). Dismissal of an indictment "is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available." *Barrera-Moreno*, 951 F.2d at 1092.

## ANALYSIS

In the motions before the Court, Ferreira raises a litany of arguments contending that the Government essentially chose to abandon the prosecution by deporting Ferreira. Particularly germane, Ferreira argues that the Government's choice to deport him violates his constitutional and statutory rights, and as such, the indictment should be dismissed.

In response, The Government contends that the Court should not exercise its supervisory powers as the removal of the defendant was not contrary to either the BRA or the INA and that the deportation itself was constitutionally sound. *See Response*, Dkt. 23, at 4-6.

The parties provided extensive argument on whether the BRA and INA conflict and what effect that might have on this case. That is understandable, since that issue has been central to the decisions of other courts dealing with the analogous situation of a defendant released under the BRA and then detained under the INA but kept in ICE custody within the United States. *See, e.g., United States*

*v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012). However, Ferreira is no longer in ICE custody; he has already been removed from the United States. His deportation has therefore, rendered any potential conflict between the BRA and INA moot, irrespective of whether what ICE did was proper. The issue now is whether the Government's actions have violated the Defendant's statutory and constitutional rights such that the Indictment must be dismissed.

Here, Ferreira's deportation, despite his pending prosecution, has violated his Sixth Amendment rights and the Speedy Trial Act. Additionally, since Ferreira has already been deported, there is no lesser remedy available to the Court other than to dismiss the indictment.[1]

### A.   Sixth Amendment right to a speedy trial

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the

---

[1] Typically, where the defendant is deported before criminal proceedings are concluded, the Government moves to dismiss the indictment. *See, e.g.*, *United States v. Rojo-Alvarado*, No. CR-19-00257-PRW, 2019 WL 4482712, at *1 (W.D. Okla. Sept. 18, 2019) ("The U.S. Attorney's Office has requested dismissal of the indictment without prejudice because DHS removed the Defendant back to Mexico."); *United States v. Rodriguez-Romo*, No. 18-10146-EFM, 2019 WL 1058199, at *1 (D. Kan. Mar. 6, 2019) ("The Government's motion does not set forth the reasons for dismissal, but Defendant's deportation is clearly the basis for the request."); *United States v. Alvarado-Velasquez*, 322 F. Supp. 3d 857, 859 (M.D. Tenn. 2018) ("Government filed a Motion to Dismiss Without Prejudice . . . asserting that Alvarado-Velasquez's removal was in process."); *United States v. Rojas*, No. 18-10048-01-JWB, 2018 WL 6696570, at *1 (D. Kan. Dec. 19, 2018) (granting government's motion to dismiss indictment after defendant was deported to Mexico).

accused shall enjoy the right to a speedy ... trial." Such a right is fundamental and exists not just to ensure "that all accused persons be treated according to decent and fair procedures," *Barker v. Wingo*, 407 U.S. 514, 519 (1972), but also because "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Id.* at 519.

In assessing the merits of a claimed violation of the Sixth Amendment speedy trial right, courts are to conduct a balancing test involving four separate factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) prejudice to the defendant. *Barker*, 407 U.S. at 529. The Court must determine "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992). Significantly, "none of the four factors identified above are either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

First, "[t]o trigger a speedy trial inquiry, an accused must show that the period between indictment and trial passes a threshold point of 'presumptively

prejudicial' delay." *United States v. Beamon*, 992 F.2d 1009, 1012 (9th Cir. 1993) (quoting *Doggett*, 505 U.S. at 652). Courts have generally found that delays approaching one year are "presumptively prejudicial." *Id.*

Here, seven months have passed since Ferreira was indicted. Although this period does not conclusively establish a "presumptively prejudicial" delay, there is currently no action being taken to obtain Ferreira's presence in court. During oral argument, the Government argued the proceeding would essentially be "stayed" indefinitely. So, while the delay, at this point, may not be "presumptively prejudicial," at some point, in the not-so-distant future, it will become so. Would the Government have the Court, and Defendant, wait until some future point and then dismiss the indictment because the delay has passed the 1-year threshold? Simply put, the Government's actions have caused the delay to-date and will continue to cause delay. The Court cannot ignore reality. Therefore, the Court finds that the delay, caused by the Governments actions, is presumptively prejudicial and will only become more so with the passage of time.

Second, as discussed, the delay is solely attributable to the Government's decision to remove Ferreira while his charges were pending. The Government contends that Ferreira did not resist deportation, in fact, he got "exactly what he wanted—removal and avoidance of criminal charges." *Response*, Dkt. 23 at 7. In

*United States v. Munoz-Garcia*, the Government made a similar argument–that the defendant did not sufficiently contest her removal. 455 F. Supp. 3d 915, 921 (D. Ariz. 2020). There, the court stated that this fact is irrelevant to the analysis of whether the criminal charges should be dismissed. *Id.*

There is a vast difference between not objecting to his deportation and facilitating such. Furthermore, Ferreira "is not present to testify as to [his] intentions, and the Government has not provided sufficient evidence to persuade the Court that [he] intended to evade criminal charges by failing to resist a removal proceeding." *Id.* Ferreira's lack of objection has no bearing on his motion to dismiss. The decision to deport Ferreira, while criminal charges were pending, was the Government's alone.

The Government further argues that dismissal of the indictment would be "punishment deterring future executive action mandated by the INA." *Response*, Dkt. 23 at 3. The Court does not find that the deportation itself was unconstitutional. Nor does the Court find that ICE does not have the authority to take the actions it did. But, having the authority to act does not foreclose consequences that may flow from those actions. *United States v. Castro-Guzman*, 2020 WL 3130395, at *3 (D. Ariz. May 11, 2020) ("ICE may retain its removal authority over a defendant on bond does not necessarily mean that ICE may do so

without consequence to the government's prosecution of him").

The Ninth Circuit has made clear that "reinstatement of a prior order of removal is neither automatic nor obligatory." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015) (citing *Villa–Anguiano v. Holder,* 727 F.3d 873, 878 (9th Cir.2013)). There, the court noted that "ICE may decide to forego reinstatement for a variety of reasons, including but not limited to the exercise of prosecutorial discretion." *Id.* Ferreira's deportation may have been appropriate, but it was not mandated prior to the resolution of his criminal proceedings.

Third, Ferreira has asserted his right to a speedy trial in his motion to dismiss. Further, he has done so in a timely manner with no delay. *See Barker*, 407 U.S. at 532 (the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial").

Finally, as to prejudice, in *United States v. Shell*, the Ninth Circuit interpreted *Doggett* as holding that "no showing of prejudice is required when the delay is great and attributable to the government." 974 F.2d 1035 (9th Cir. 1992). Here, although at this moment the delay is not particularly great – yet – there is no movement towards bringing this case to trial. More importantly, as discussed above, the delay is solely attributable to the Government. Thus, the final factor favors Ferreira.

Having weighed the relevant factors, in particular the cause of the delay being solely attributable to the Government's actions, the Court finds that Ferreira's deportation has resulted in a violation of his constitutional right to a speedy trial.

B.      **Sixth Amendment Right to Counsel and Right to Access**

The Sixth Amendment grants a defendant the right to "consult with counsel, to review the evidence against him[,] and to prepare a defense to the charge." *United States v. Calderon-Lopez*, 2020 WL 2616034, at *2 (D. Ariz. May 22, 2020); *see also Maine v. Moulton*, 474 U.S. 159, 170, (1985) ("[T]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself."); *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990) (The Sixth Amendment guarantees the right of "meaningful access to the courts"); *Rushen v. Spain*, 464 U.S. 114, 117 (1983) ("Our cases recognize that the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant").

The Government contends that Ferreira's right to counsel has not been violated since he may consult with his attorney through calling, writing, emailing, or can lawfully apply and enter the United States and resume work with his attorney. *Response*, Dkt. 23 at 6. The Government further contends that it has not violated Ferreira's right to be present because there has been no trial for which he

was unable to be present for. *Id.*

While Ferreira may be able, hypothetically, to confer with counsel, the reality is that he is now in another country. His whereabouts are unknown and Defense counsel has been unable to communicate with him since his removal. As such, Ferreira's ability to meaningfully communicate with counsel or prepare his defense have been severely curtailed by the action of the Government. *See United States v. Resendiz-Guevara*, 145 F.Supp.3d 1128, 1138 (M.D. Fla. 2015) ("it is clear that Defendant's deportation presents a clear challenge . . . to his ability to consult with counsel, to review the evidence against him and to prepare a defense to the charge"). Moreover, "it is not the prerogative of the prosecution or ICE to dictate how [Ferreira] is able to consult with his attorney." *See United States v. Lutz*, 2019 WL 5892827, at *5 (D. Ariz. Nov. 12, 2019).

Further, Ferreira has been unable to be present at his pretrial hearings. Additionally, although there has been no trial, it is doubtful that the Government would be willing to allow the Defendant back in the United States even if he sought admission. *See* 8 U.S.C. § 1182(a)(9)(A)(ii) (providing that aliens seeking admission to the United States who have been previously removed for a second time within 20 years are inadmissible). Thus, the Government is presenting this Court with an unacceptable choice – either grant an indefinite stay forgoing

**MEMORANDUM DECISION AND ORDER - 10**

Ferreira's right to a speedy trial or proceed to trial without his presence.

In Sum, the Court finds the Government's removal of Ferreira has violated his Sixth Amendment rights as it has "impacted his ability to communicate with counsel and participate in his criminal case[.]" *Castro-Guzman*, 2020 WL 3130395, at *5.

### C. Speedy Trial Act

The Speedy Trial Act sets strict time limits, within which, each stage of the prosecution must be completed, including that a defendant be tried within 70-days from the filing date of the indictment. *See* 18 U.S.C. § 3161(c)(1); *see also United States v. Pollock*, 726 F.2d 1456, 1460 (9th Cir. 1984).

The Act's required time periods may only be extended pursuant to certain exclusions listed in Section § 3161(h). Of those exclusions, only a few are germane to the case at hand. The first relevant exclusion is "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness." 18 U.S.C. § 3161(h)(3)(A). Under the Act, a defendant "shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial." 18 U.S.C. § 3161(h)(3)(B). Second, any period of delay resulting from "the filing of any pretrial motion, through the conclusion of the hearing on, or other prompt disposition of, such motion" concerning the defendant is excluded from the

calculation. 18 U.S.C. § 3161(h)(1)(D). Lastly, § 3161(h)(7) gives the trial court discretion to extend the 70-day requirement by a finding "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *See Pollock*, 726 F.2d at 1460.

When the mandates of the Speedy Trial Act are violated, and a "defendant is not brought to trial within the applicable 70-day time limit, the indictment must be dismissed." *United States v. Alvarez-Perez*, 629 F.3d 1053, 1062 (9th Cir. 2010) (citing 18 U.S.C. § 3162(a)(2)).

Here, Ferreira was indicted on July 14, 2020, and his trial was set for September 21, 2020, 69 days later. Ferreira's motions were filed just ten days before trial was set to begin, and by the time of the hearing, 150 days had passed since he was indicted. As such, the Speedy Trials Act's strict 70-day time requirement has long come and gone.

Furthermore, none of the Act's exclusions provide an applicable extension.[2] First, as discussed above, Ferreira's "unavailability to face the charges against him is not due to his own volition but the Executive Branch's decision to deport him." *Resendiz-Guevara*, 145 F. Supp. 3d at 1138. In *Resendiz-Guevara*, the court noted,

---

[2] Although the Government did not raise any time period exclusions under the Speedy Trial Act, the Court finds that an analysis of relevant exclusions is necessary.

there is "no suggestion § 3161(h)(3) applies where the Government causes the unavailability." *Id.*; *see also Castro-Guzman*, 2020 WL 3130395, at *5 ("seventy days have long since passed and, given that the reason for his absence is removal by the government, none of the excludable grounds for delay under § 3161(h) appear to apply").

Moreover, it is the Government's burden to establish its due diligence to obtain Ferreira's availability. Here, the Government made no mention of any actions it has taken to obtain Ferreira's presence at trial. Therefore, even if §3161(h)(3) were to apply in this situation, it would not provide any exclusion as the Government has not satisfied its requirements.

Second, the delay caused by the pending motions to dismiss does not implicate § 3161(h)(1)(A). Like Ferreira's unavailability, the delay caused by the pending motion is the result of the Government's choice to remove him and, therefore, should not be excluded from the speedy trial calculation. *See Resendiz-Guevara*, 145 F. Supp. 3d at 1138.

Finally, the ends of justice served by granting essentially an indefinite stay of Ferreira's trial does not outweigh the best interest of either the public or Ferreira in a speedy trial. Ferreira has been charged with one count of illegal reentry. If he is once again found within the United States illegally, the Government may elect to

charge him with the exact same crime without incurring any additional burdens.

In Sum, the Speedy Trial Act's 70-day requirement has been violated, and none of the excludable grounds for delay under § 3161(h) apply. As such, the Court must dismiss the indictment.

### D. Dismissal of the Indictment with Prejudice is the Appropriate Remedy.

There is no binding authority as to the appropriate remedy where, under the Court's supervisory authority, an indictment has been dismissed because the Government's removal of a criminal defendant pending trial violated his constitutional or statutory rights. However, in *Santos-Flores*, the Ninth Circuit suggested that dismissal with prejudice is an appropriate remedy where the government, by deporting a defendant, "jeopardizes the district court's ability to try him[.]" 794 F.3d at 1091. In holding that courts may "craft an appropriate remedy" under such circumstances, the Ninth Circuit cited approvingly to *Trujillo-Alvarez*. *Id.*

In *Trujillo-Alvarez*, the defendant, charged with one count of illegal reentry, was granted pretrial release under the BRA but immediately taken into custody by ICE under a previously lodged detainer. 900 F. Supp. 2d at 1172. The defendant was subsequently transferred from the District of Oregon to the regional ICE detention center in Tacoma, Washington. *Id.* After determining that the continued

detention by ICE violated the defendant's statutory and constitutional rights, the court exercised its supervisory powers and granted a conditional motion to dismiss. *Id.* In its order, the court gave the Government a choice of remedies: return the defendant to the District of Oregon and follow the release order or continue his deportation proceedings and have the indictment dismissed *with* prejudice. *Id.* at 1179-81.

Here, the Court finds that dismissal of the indictment with prejudice is appropriate. Unlike *Trujillo-Alvarez*, there is no lesser remedy available. Ferreira has already been deported. His constitutional and statutory rights have been and will continue to be violated. *See United States v. Coronado-Vejar*, 2020 WL 2782502, at *4 (D. Ariz. May 29, 2020) ("dismissal of the indictment with prejudice is the proper remedy for the violation of Defendant's Sixth Amendment right to counsel"). Additionally, these violations are solely attributed to the actions of the Government, and there is no effort on the part of the Government to obtain Ferreira's presence at trial. *See Lutz*, 2019 WL 3253194, at *3 (dismissal with prejudice was warranted where the "violation of Defendant's constitutional rights is solely due to the actions of the Government").

Finally, the Court finds that dismissal with prejudice is appropriate where "ICE has initially chosen to prioritize a defendant's criminal prosecution over his

immediate removal but then reversed course when faced with a lawful release order under the BRA." *Coronado-Vejar*, 2020 WL 2782502, at *3. Deporting defendants regardless of the resulting prejudice to criminal prosecutions displays an "apparent willingness to prejudice the interests of the people of the United States and the constitutional rights of the accused, with resulting waste of DOJ, court, and defense resources." *Calderon-Lopez*, 2020 WL 2616034, at *2 (internal citations removed).

## ORDER

**IT IS ORDERED** that:

1. Defendant's First Motion to Dismiss the Indictment (Dkt. 17) is **GRANTED** and the Indictment (Dkt. 1) is **DISMISSED WITH PREJUDICE.**

2. Defendant's Second Motion to Dismiss the Indictment (Dkt. 18) and Motion to Compel (Dkt. 20) are **MOOT**.

DATED: February 12, 2021

B. Lynn Winmill
U.S. District Court Judge